525-0301 W.C. Ascon Metals Appellant by Kesa Stanikia v. Illinois Workers' Compensation Commission et al. Tom Snyder-Appley by John Bautista-Patti Council you may proceed Thank you. May it please the court, council, good afternoon. My name is Kesa Stanikia and I represent the employer Ascon Metals in this matter. This case arises from a single workplace accident that resulted in the amputation of claimant's right foot. The employer promptly paid statutory PPD benefits at the minimum amputation rate under Section 80 of the Act. At maximum medical improvement, the claimant was able to meet the heavy physical demand requirement. Vocational evidence admitted by the claimant at the time of trial reflected that he had a higher post-injury earning capacity in a different occupation than he earned at the time of the injury. At trial, the claimant waived his right to benefits under Section 8D1 and elected to request that the commission award him additional benefits under Section 8D2. Ultimately, the commission awarded PPD benefits under Section 8D2 for 225 weeks for an injury to the right foot and denied the employer a credit for previously paid PPD benefits under Section 8E for the right foot in the amount of approximately $97,000. It is undisputed that the only injury that the claimant sustained as a result of this accident was to the right foot. It is undisputed that the employer made a good faith and prompt payment of statutory benefits under Section 8E for loss of use of the right leg. Claimant had a catastrophic injury and suffered the loss of a limb. We're not going to dispute that or minimize that. What we dispute is the commission's findings that the statute permits them to award benefits under both Section 8E and Section 8D2 for the same injury to the right foot. Let me stop you, Counselor, for just a second. Just for clarification, you said that the only injury he sustained was to his foot, but they did remove from the knee down. Are you considering that? Am I confusing that? Is that all considered the foot or is that the leg and the foot or the calf and the foot? How does that work? No, that's a great question. And just to be clear in this argument, I'm going to call it the right foot, but any amputation below the knee, called a below the knee amputation, which would include the right foot, is compensated by Section 8E for the leg, which is 215 weeks. Okay, so you're not disputing that he lost part of the leg due to the accident? No, I'm not disputing that. I just wanted to clarify for my part. There's no dispute that the only injury he suffered was the below the knee amputation, but for simplicity, I'm going to call it the right foot. Okay, thank you. As long as, I don't want to interrupt your presentation, but I had some difficulties with your brief. And one of them, here's, I've got three that I noted. And one of them is on page 19. You say, you're speaking of the Mitchell case. And you say in the paragraph, in the middle paragraph, the court reasoned that 8E's bar against other compensation applied only when both awards relate to the same injury or body part. And I don't see that in the case. So, in the Mitchell case, the court, the claimant suffered an injury to his left arm. And the court discussed the last section of 8D2 and the authority of the commission to award benefits under Section 8E and 8D2. The court found that the claimant had an injury to the left arm and an injury also to the back and the neck. So, they said there was no prohibition from an award. No, I read it. Yeah, I did. But my issue is in that next paragraph, for example, you quote Mitchell. And I don't mean to cross examine you, but I do bring it up because it impeded my review. You know, each time I found references to language that didn't appear in the case, it was frustrating for me. And I mean frustrated me going on and reading the merits and understanding your case because then I would stop and go look in the case and look for that language. So, for example, you quote the court noted 8E and said the compensation provided under this paragraph shall be in lieu of all other compensation. That's out of that's out of Section 8E. Section 8E says the compensation provided under Section 8E shall be in lieu of all other compensation except as provided under paragraph B of the section. I agree that there's no pinpoint citation there. I apologize for that. Okay. All right. Let me see if there was. Then maybe I misunderstood. That paragraph cites the provision Section 8E. You go on to say, and again, if I have this wrong, I apologize. Because I was really, really reading your brief for meaning and trying to make sure I understood every bit of it. The court explained the language reflects legislative intent to prevent a claimant from receiving both the scheduled loss award and a permanent disability award for the same injury because such duplication would result in unjust enrichment and inconsistent compensation schemes. You know, you don't provide a pin site, but nonetheless, you know, sometimes people forget and while I find that to be sloppy, I can forgive that. But I went back through Mitchell, like, where does it say, you know, where does it say that? I did a word search. It never uses the unjust, the word unjust. It never uses the word enrichment. It never uses the word inconsistent. It never uses the word schemes. And I just was, you know, wanted to bring it to your attention in case you're using, you know, research methods that, you know, are inaccurate. So you can correct this in the future. I apologize that that was difficult to read and I did catch I did catch that there was no pinpoint citation. I think what happened was, you know, more concerning. I don't see the case saying that because I could absolutely forgive somebody forgot a pinpoint site, but I don't see that in the case. So it's fun to bring it to your attention. So let me just add to Justice Mullins question here. Was AI used in your brief at all? No, no, I think what happened there, Justice, is I think two sentences got mixed and there were many edits that went through this and that's what happened. I did catch that there was no pinpoint citation there and I apologize for that. Okay, so in other words, there were no legal AI programs or apps that were used to help draft the memo or anything? I'm not asking about editing, but as far as drafting, no. Okay, we're finding that more and more throughout the state, you know, and throughout the country, people are using the AI apps and are sometimes those are sloppier than other times. And I don't think there's no prohibition for using an AI app in Illinois. But out of my own personal curiosity, if I see something like that, I sometimes will ask just to find out if there is a program being used and then what program it might have been. But as you've answered, there was no program use. So please, thank you for answering that. Yeah, I apologize that there was difficulty in understanding that paragraph to the court. But despite that, I still believe that the Mitchell case and the Jewell case both support the argument that we're trying to make here. In both cases, the only reason the court found ability to award benefits under Section 8E and Section 8D2 was because they were separate and distinct injuries. You don't have that here. You don't have the separate and distinct injuries. There's only the injury to the right foot. And in terms of the statute, the commission relies on a fragmented reading of the last sentence of Section 8D2. And that's this paragraph shall not affect the employee's right to compensation payable under paragraphs B, C, and E. The statute, if you read it as a whole, between both Section 8D2 and 8E, does not support the commission's interpretation. The clause right before that says compensation awarded under this subparagraph to shall not take into consideration injuries covered under paragraph E. It unambiguously states that a scheduled injury already compensated under Section 8E cannot get a second award for the same injury under Section 8D2. The second part of Section 8D2, at the beginning of Section 8D2, it clearly says injuries not covered by the schedule or cases involving additional separate injuries beyond a scheduled loss. And then third, if you go to Section 8E, this mirrors that same limiting language. And that's the language, I think, Justice Mullin, you point that we just discussed. It says shall be in lieu of all other compensation other than Section 8B. If you read the limiting language in Section 8D2 and the limiting language in Section 8E, it is clear and unambiguous that the legislature did not intend to allow dual or cumulative compensation to the same body part. And the commission's interpretation, I believe, is erroneous. May I interrupt again? I apologize. Page 11 of your reply brief, so it goes 10, 11, statutory framework in 8D1 also governs 8D2, which provides and then you appear to quote 8D2. And, you know, again, I'm not trying to pillory you here or anything. I was like, whoa, wait a minute. That's right in there? Then it says in 8D2, which I have a hard time understanding how I could have read this wrong, because you've got that site right there. I don't know if you're looking at it. This is not a test, but 8D2, then he shall be compensated for the percentage loss of the person of the whole. I was like, oh, well, that's I hadn't seen that in the statute. And I checked Westlaw and again, this, I really am illustrating that it did impair my review or impede, I think is the phrase from the cases because, like, I must be perhaps Westlaw is wrong. Sometimes when I'm concerned about statutes, I'll go to the Illinois General Assembly. I did that here to see could Westlaw, you know, I know that's just kind of crazy, but I worked a long time on this and it wasn't in there. So I did a search. Percentage is in there once in 8D2, but not in this sentence. So it ends, then he shall be compensated for the percentage loss of the person as a whole. Person's not in there, I think. Did I set that aside? Yeah, whole is not in there. The word's not in there. I mean, it doesn't read that way, but also I thought, well, it's a long, you know, run on sentence in the word compact. Maybe I've missed it, but I did a word search. Can't find it. So again, this is strange. I think that you quote, you purport to quote the statute and yet that language isn't in there. I'm. I just wanted to point it out. Again, I apologize to the court for that. I know that there are multiple attorneys that did revisions on this, and I don't know if that is why that occurred. I hope it did not impede your review of this matter. Um. Moving on. This matter only had one distinct injury to the right lower extremity. The claimant never alleges the commission never found any additional bodily injury. They stipulate a claim and stipulates a de novo review for an injury only to the foot at the time of trial. He was asked after he testified about the condition of his right foot. Is there anything else about your physical condition? And he responds? No, really? That's pretty good. That's on page 51. So the commission in their decision only relies on the economic loss of trade. Would you would you like to summarize I see the red light is on. Yeah. Presentation, you'd like to summarize and conclude you will have time and reply. Yeah, I don't think this case is about whether the claimant deserves compensation. It is about whether or not the commission exceeded their authority in awarding dual compensation for. For the right foot under both sections 80 and 82, they denied a credit to the employer. The Lester case does encourage prompt payment, which was done here because that's a fixed and known payment that's made for a benefit. The act is unquestionably remedial, and it must be literally construed to affect its purpose. I agree with that, but an expansion of the benefits or alteration of our section 80 and 80 to interact as a policy decision for the legislature and not the commission. You know, the prior precedents show that the commission has awarded this credit has addressed section 80 to an 80 as separate and distinct acts for separate and distinct injuries. And we would ask that you either reverse the commission's section 80 to award, or in the alternative hold that the employer can get a credit for the prior payments against the section 80 to award that were made under section 80. Thank you. Any questions for the questions from the bench at this time? How do you read the 82 at the end where it says compensation awarded under this sub paragraph to shall not take into consideration. Injuries covered under. Here, relevantly. I didn't read that. So, I think you have to look at the clause right before that that says compensation awarded under this sub paragraph shall not take into consideration injuries covered under paragraph C and E. I think, and then there's an end in between those 2 clauses, which I believe prohibits awarding a benefit under section. 82 and 80 and section 80 also mirrors the same language that that is benefits under section 80 are in lieu of all other compensation. But I guess, you know, so you. You read those together. I read those clauses together. I think that that clauses, as you know, in Mitchell and jewel foods for a separate and distinct injury. So, if you get something under section 80, let's say, you know, for example, in do you think the statutes ambiguous. I don't think it's ambiguous. I don't think the statutes ambiguous. I think there's section 80 to there's 2 sections, the beginning they say compensation awarded under this paragraph to shall not take into consideration injuries covered under paragraph E. And and then section 80 says the same thing shall not receive compensation under any other provisions of this act and shall be in lieu of all other compensation. I don't think the statute is ambiguous at all. So, you read this language is prohibiting. Any other award for the same body part. Now, if you have 2 separate and distinct injuries, then you can get an award under section 80 and section 82. that's in Mitchell. He had an injury to his left arm and an injury to his back and neck. The left arm was compensated another 80 and the neck and back under 82 and jewel foods. There was 100% loss of use of the foot found under 80. And you're right, you're right that there are cases under 82, where the employee has had other injuries, but I'm really focused on the language 1st. But I think that you've answered it. Other questions. Okay, none. Okay. You'll have time and reply council. Good afternoon, your honors. My name is Patty. I'm going to JB. I represent Mr. Schneider in this case. 1 thing I do agree with counsel. I agree that the statute is unambiguous. Specifically, there's no provision in 82 that allows for an offset. For benefits paid under section 8. We believe the statute is pretty straightforward. With that regard, but there's a provision in 82 that I think is. Important when considering the appellant's argument. It's the addition in addition there too. That provision, I believe, carries meaning. In this analysis. And I'll quote from the statute section 82 if, as a result of the action, the employee sustained serious and permanent injuries, not covered by paragraphs C, which is disfigurement. And E, which is a schedule of injuries. This section or having sustained injuries covered by the affirmation paragraphs C, disfigurement and E, the schedule of injuries. He shall have sustained in addition there to other injuries, which injuries do not. And. Sorry, I lost my spot for a second. And just do not incapacitate him from pursuing the duties of his employment, but which would disable him from pursuing other suitable occupations. As. Justice Mullen mentioned earlier, there's a pretty long run on sentence there, but the point of that provision. Adopting the arguments. Of the appellant would render that. Entire provision meaningless. And I think that it's. How is that? How do you find that? Why would it render it superfluous or meaningless? Because in this particular case, Mr. Schneider suffered a specific loss. Amputation of his foot as well as the amputation of his leg below the knee. That was paid. That's undisputed, but he also was unable to return to his job. It's what is referred to in. Within the workers comp bar as. A loss of trade that is the provision that 82 specifically. Addresses in this particular case. The commission recognized that. A 20 year old lost his foot and later his leg when I say later. Within 24 hours, so imagine you're 20 years old. A week after the pandemic hits. And you're going through. The tragic loss of your foot and then your leg. Initially. I think the statue was read. With its intent in mind, and that's to compensate. And it was construed liberally. In favor of compensation for a case like this. Specifically, I think perhaps the most telling aspect is section. 82 has no exclusionary language that would allow for such offset. So, we believe that the decision of the commission was. Correct now, the standard of review here is de novo. You are called to. Evaluate the law, evaluate the statute. And you don't have to show deference to the commission. You don't have to show deference to the commission. You don't have to show deference to the commission.  When we're looking at issues of statutory interpretation. We look at it. We do sort of ascertain the. And effectuate the legislature's intent. And what is the intent of the workers compensation act? It's to provide compensation. In an expeditious and. I'll be an informal manner. And it is liberally construed to. We're in favor. Of that sort of compensation. So, let me, let me ask you a question on this. So, I'm a little bit confused now. With regard to the 80. Benefits that were paid. That was not an award by the commission or the arbitrator. Correct. Correct. Because that was. I understand that was paid. For the foot of the leg. Sooner rather than later. Litigation. Because of the accident, because of the loss. And that was specifically paid because of the loss of the foot, the leg. Right. Correct. Okay. And then later. After litigation, the eight D. Section that. The award that the commission awarded. Was for what. For the loss. For the loss of trade. Well, for the loss of trade. So. And that's what the commission said. Well, the commission. What the commission said specifically was it. The award was to account for. The additional. Additional impairment that resulted from the. From the amputation. From the amputation. The commission specifically cited and referred to the arbitrator's decision. When the arbitrator found that the statutory amputee. Amputation benefits. Fell short of fully compensating. The petitioner for. The full extent of his injuries. So, so the, the claimant here though, has the right. To choose.  When he goes to the commission. To choose benefits either under 80 or under eight D. Correct. Well, He can't, he can't ask for both. He can choose one or the other. So the injured worker has to choose between 81 or 82. That is correct. With respect. To eight E eight East is simply the schedule of injuries. That refers to the injured body parts that the. That the injured worker has suffered. The additional benefits, whether we're talking about. A wage differential, which is 81. Which that's what, that's what the claimant that's what the employee, the employee. Waived. In lieu of a person as a whole award under. So he didn't recover under 81.   So he recovered under 82. Yes, right. And that was for. Loss. Of a whole. Correct. To account for the loss of trade. Wait, wait, wait a minute. I think we're. There's no. That is true. Your honor. And I, I apologize. I'm using the vernacular of the. We're under the act here. Understood. Then I'll refer to him exclusively as person as a whole award under 82. So I hear you reading injuries in that. That sentence, the partial sentence that you run. Yes. Maybe I have it wrong. I hear you reading injuries. As well. Yeah. He had his leg injury, but then he also had the injury to his. Occupation. And you even used a phrase similar to snow. Am I right? Cause I'll be honest with you. I have a hard time. Squaring that. With even just that phrase. Clearly they're talking about physical injuries. Because then they go on and say. We're in that same clause right before the semi-colon. Which injuries. Other injuries, which injuries do not incapacitate him from. From pursuing the duties of his employment, but would disable him from. Pursuing other suitable occupations or which otherwise. Or which have otherwise resulted in physical impairment. Correct. Seems like they're talking about, you know, your employability. You're. As a separate thing and they use a separate term. I have a hard time reading. This, this clause. The use of the word injuries to include. An occupational injury. I can. Sorry. No, I just, and I want to make sure. Is that what you're saying? Yes, let me put it a different way. Your honor, if Mr. Schneider has suffered these. These injuries, the same injuries, but was able to return to his employment. Then. We're not looking at 82 and 82 award. We're not looking at. He doesn't undergo a vocational. Rehabilitation assessment. He lost the ability to return to his employment. That's what qualifies him. For benefits under section 82. In addition to the statutory benefits for the loss of his leg. And the absence of exclusionary language. And 82. Permits that.  Any other questions. Continue. With that. We believe that the decision of the commission. Was appropriately reached. We appeal to this court. That they affirm and adopt. The commission's decision. Awarding 82 benefits. As well as 80 benefits. And preclude. The employer or the appellant in this case. From asserting a credit against the statutory benefits previously paid. Thank you. And that's all because you can't find exclusionary language.  Well, yes, your honor. And that's important. That's. You know, if that exclude that exclusionary language exists, for example. An injured worker cannot recover under section eight. Or and eight C. So we understand that if you suffer. A broken arm and you have a scar on your arm. You can't recover for the broken arm, the loss, the. The schedule of injuries under eight. On top of. And elect on the. And collect benefits under section eight C for the disfigurement. Caused by the scarring of that, of that procedure. So the exclusionary language is present in the statute. It's no accident that that exclusionary language. Isn't present in a. May I ask. The same question I had for counsel. Your opponent. The 82 ends with. This sentence compensation awarded under this sub paragraph to. Shall not take into consideration. Injuries covered under. Paragraph C and E. And then there's another piece of this. Sentence. Which council finds. Meaningful, but I wanted to ask. So I'll ask you both. Both questions, which is how do you read this language? Compensation awarded under this sub two. Shall not take into consideration injuries covered under. Sub E. What does that mean? It means that injuries. It means compensation. Injuries could be just called scheduled injuries. Yes. I think that's probably easier at first. Benefits. So. Compensation awarded under this sub paragraph. Person as a whole 82 benefits. Shall not take into consideration. Specifically and explicitly referring. To injuries covered under paragraph C. Disfigurement or E. Schedule of injuries. That's what's that issue here. That final sentence, your honor, I believe. Removes any potential doubt that we have with respect to what the statute says. But we'll go on. And the compensation provided in this paragraph. So compensation provided under section 82, the person as a, as a whole award. Shall not affect the employee's right to compensations payable under. Disfigurement. Sorry, I jumped the gun on B, B, which would be the death benefits. Correct. Disfigurement and the schedule of injuries of this section for disabilities. They're in covered. I believe that that entire sentence, both parts of that sentence, your honor. I think establishes. You don't think they're saying 2 different things you're saying they're saying 1 thing. I believe so. I mean, the reason I pushed back a teeny bit is that in the 1st, part of the sentence, they're saying sub paragraph 2. So that's clear as a bell sub paragraph 2. Then in the next 1, though, it says this paragraph. Doesn't say this sub paragraph. It says this paragraph. I assumed I shouldn't say assumed. I mean, I carefully considered the language and thought, well, they must mean D1 and D2. Otherwise, why go to the trouble of saying sub paragraph 2 just before in the same sentences. And, you know, I think which goes along nicely with the idea that if the legislature is using different words, they mean different things. But you don't see it that way. Your honor. I must admit, I didn't notice that distinction between paragraph and sub paragraph within that same sentence. If you allow me a quick moment. Oh, no. Your honor, if you read it that way, including a D1 and a D2. What it well. I think we're what you're getting at is it would suggest that 81 wage differential would be permissible on top of a schedule a schedule award. I admittedly did not read it that way. When I reviewed the statute, your honor. But your time has been up for some time council. I understand your honor. Thank you very much. Just soldier. I do have 1 further question if you'll allow me. Of course. So, in on page 4 of your brief, you have in their last last sentence of the paragraph in the case at bar the additional work for petitioners subsequent leg amputation compensates him for loss of total body functions separate and apart from his prior amputation. So, you're treating this as 2 separate or injuries to separate amputations, whereas appellant has argued that this is 1. A continuation of the injury below the leg. How is that. We're up with the argument that you can't be compensated under 80 and under D2. Well, your honor, I think it's rectified by just a simple medical reality that this gentleman endured 2 different amputations, albeit with the temporal relationship was relatively short. But it was a day within the day. Well, the 19th and the 20th, so I think it's within 24 hours. And there was only 1 accident that occurred. That is true. But you're getting, you know, trying to be conservative and not and trying to save part of the leg by only amputating the foot at 1st. And then realizing that the injuries were perhaps worse than hoped expected and needed to go up under the knee is all continuation of that 1 accident. The results of that 1 accident, not 1 injury. So, 1 final question. How is it that if he's able to get benefits under 80 and then elects to receive benefits under 82, without a credit to the employer, isn't that dual compensation for the same accident, same injury? And 2, if we were to find, as you wish us to, that they're, you know, under 80, you know. Absolutely not, your honor. The reason for that is because, as I mentioned earlier to Justice Mullen, in this particular case, had Mr. Snyder been able to return to his employment, 82 benefits aren't on the table. It would not have a chilling effect because, well, when an injured worker suffers a loss of a limb and the statutory obligation to pay benefits promptly is triggered, the risk of additional and unforeseeable disability or inability to return to their employment wouldn't preclude them from their prior obligation to pay prompt benefits for a statutory liability. Okay, thank you. Thank you, your honors. Okay, any questions further from the bench on this case? No? Okay, good. Well, you may reply, counsel. I just want to follow up on the prompt payment of the amputation. The Lester case indicates the reason for the prompt payment is that the statutory amount is fixed and known, and therefore, the employer can start making that payment. And here, we could have made that payment weekly, but we did not. We made that payment in lump sum. And, you know, in PAIETA, they again reiterate that same principle, that you pay that amount because it's known and fixed, the amount that you're going to pay for this amputation. And they even say in PAIETA, you can then get a credit if you're awarded 81 benefits in the future, if you're awarded additional benefits in the future. So the employer has no risk in paying the amount on a weekly basis. The amount that they're supposed to be paying is fixed. And if they end up paying more, as I believe counsel indicated, if there's a loss of profession, and he gets a Section 82 award, they get a credit for the amount they've already been paid. If the commission's decision stands as it is, there's no credit. In terms of the amputation. You cited a case called PAIETA, am I correct?  For that? Then why doesn't this case control this case? So PAIETA deals with Section 81, and the exclusionary language in Section 81, which I believe mirrors Section 82, except it doesn't have the same exact words. 81 says except in cases compensated under the specific set schedule set forth in paragraph E of this section. That's what 81 says, and PAIETA says based on that language, it's exclusionary and the credit applies. Counsel argues that PAIETA does not apply because it deals with Section 81. I believe that Section 82 has mirroring exclusionary language. Having sustained injuries, sorry, the employee sustained serious and permanent injuries not covered by paragraph C and E. That's at the beginning. We are not, it is not our position that the claimant is not entitled to an award under Section 82. That is not the position. I believe it's unambiguous that the legislature intended not cumulative benefits, but different paths to recovery for one injury. I believe that's all I wanted to address on rebuttal. I apologize that it got disjointed. Are there any questions for me? There appear none. So I think you have a little time if you want to conclude, although I think you have concluded. Am I correct? Yes, Your Honor. Okay, good. Thank you, counsel, both for your arguments in this matter. I will be taking their advisement and the written disposition shall issue. This time, the clerk of our court will escort you from our remote courtroom and we'll proceed to conference. Thank you, Your Honor.